UNITED STATES

v.

John E. PILKINGTON, 590 54 2182,
Lance Corporal (E–3), U.S.
Marine Corps.

NMCM 96 02393.

U.S. Navy–Marine Corps
Court of Criminal Appeals.

Sentence Adjudged 11 April 1996.

Decided 5 Feb. 1998.

LT Jeffrey K. Van Nest, JAGC, USNR,
Appellate Defense Counsel.

LCDR J. Alan Beall, JAGC, USN, Appellate Government Counsel.

Before DOMBROSKI, Chief Judge,
SEFTON and OLIVER, Appellate Military
Judges.

OLIVER, Judge:

A military judge, sitting as a special court-martial, convicted the appellant, consistent with his pleas, of conspiracy to maltreat subordinates, five specifications of maltreatment, making a false official statement, and two specifications of assault, in violation of Articles 81, 93, 107, and 128, Uniform Code of Military Justice, 10 U.S.C. §§ 881, 893, 907, and 928 (1994)[hereinafter UCMJ]. The appellant's sentence included a bad-conduct discharge, confinement for 150 days, forfeiture of $550.00 pay per month for 4 months, and reduction to the lowest enlisted pay grade.

On 14 November 1996 the convening authority approved the adjudged sentence. However, pursuant to the terms of a post-trial agreement, he suspended confinement

in excess of 90 days for a period of 12 months from the date of trial. Although in the pretrial agreement the convening authority had agreed to suspend the bad-conduct discharge for 12 months from the date of trial, the terms of the post-trial agreement provided that the convening authority could approve the bad-conduct discharge as long as he "limited" confinement to 90 days. The post-trial agreement did not include a provision requiring suspension. *Compare* Appellate Exhibit II, ¶ 1, *with* Post Trial Agreement of 28 May 96, ¶ 2.

We have examined the record of trial, the three assignments of error,[1] and the Government's response thereto. Except as discussed below, we conclude that the findings and the sentence are correct in law and fact and that no error materially prejudicial to the substantial rights of the accused was committed.

### Post–Trial Agreement

The appellant contends that the convening authority did not have the authority to approve post-trial modifications to the negotiated pretrial plea agreement. He argues that such action improperly prevented judicial scrutiny of the agreement's terms and conditions. He asks that we disapprove the bad-conduct discharge or order a post-trial hearing. We conclude that, under the circumstances of this case, the appellant is not entitled to any relief.

Citing *United States v. Green*, 1 M.J. 453, 455–56 (C.M.A.1976), and *United States v. King*, 3 M.J. 458 (C.M.A.1977), the appellant notes that our superior Court established certain requirements for judicial scrutiny of pretrial agreements. In effect, the Court "enlarge[d] the [*United States v.*] *Care* [, 18 C.M.A. 535, 40 C.M.R. 247, 1969 WL 6059 (1969) ] inquiry to cover the 'terms and con-

ditions' of a pretrial agreement. . . ." *Green*, 1 M.J. at 457 (Cook, J., concurring in part, dissenting in part)(footnote omitted). *See United States v. Elmore*, 1 M.J. 262, 264 (C.M.A.1976). In *King*, the Court stated that failure to comply fully with the requirements of *Green* would render a guilty plea improvident and would require the setting aside of the findings and sentence. *King*, 3 M.J. at 459.

In *United States v. Williamson*, 4 M.J. 708, 710 (N.C.M.R.1977), this court listed the procedure Navy and Marine Corps judges must follow in conducting the inquiry into the adequacy of a pretrial agreement. These factors, slightly modified, are now incorporated into the applicable portions of the TRIAL GUIDE. NAVY-MARINE CORPS TRIAL JUDICIARY'S TRIAL GUIDE, January 1996, at 26–35, 45–46. *See* RULE FOR COURTS-MARTIAL 910(f), MANUAL FOR COURTS-MARTIAL, UNITED STATES (1995 ed.)[hereinafter R.C.M.]. Nowadays military judges invariably follow these procedures and we rarely see any appellate issues based on violations of these requirements. The appellant contends that the Government should have arranged for a similar procedure before a military judge in this case and, because it did not, that this court should set aside the bad-conduct discharge.

In the cases cited above, of course, the courts were discussing **pretrial** agreements. Although the appellant attempts to incorporate the reasoning and requirements of these decisions into the instant matter, the case before us involves a **post-trial** agreement. We also note that the appellant proposed this agreement and that it related solely to the convening authority's obligation under the sentencing provision of the pretrial agreement. It had no effect whatsoever on the **findings**.

---

1. I. THE AMENDMENT TO ARTICLE 57, U.C.M.J., AND THE ADDITION OF ARTICLE 58b, U.C.M.J., VIOLATE THE *EX POST FACTO* CLAUSE OF THE CONSTITUTION WITH RESPECT TO THE APPELLANT.

    II. THE CONVENING AUTHORITY DID NOT HAVE THE AUTHORITY TO APPROVE POST–TRIAL MODIFICATIONS TO THE NEGOTIATED PRE–TRIAL PLEA AGREEMENT SINCE SUCH ACTION PREVENTED JUDICIAL SCRUTINY OF THE PLEA AGREEMENT'S

TERMS AND CONDITIONS AS REQUIRED BY LAW.

    III. THE DISPARITY BETWEEN APPELLANT'S SENTENCE AND THE SENTENCE OF STAFF SERGEANT KEATON (NO PUNISHMENT) AND SERGEANT GOLIASH (LTR OF REPRIMAND) RENDER APPELLANT'S SENTENCE TO AN UNSUSPENDED BAD–CONDUCT DISCHARGE INAPPROPRIATELY SEVERE.

These distinctions are critical. The primary purpose of the *Care* and *Green/King/Williamson* cases was to insure that the appellant's guilty pleas are "voluntarily and providently made." *Green*, 1 M.J. at 456. *See* Art. 45(a), UCMJ, 10 U.S.C. § 845(a). There is no question that the military judge correctly resolved this crucial question on the record with respect to the other terms of the pretrial agreement before entering findings. Record at 67–68; *see* Record at 124.

While neither this court nor our superior Court has faced a situation comparable to the instant one, military appellate courts have long recognized that an appellant has a right to enter into an enforceable post-trial agreement with a convening authority when the parties deem such an agreement mutually beneficial. *See United States v. Cassell*, 33 M.J. 448, 450 (C.M.A.1991)(referring to a "post-trial agreement"); *United States v. Giroux*, 37 M.J. 553, 555–56 (A.C.M.R. 1993)(same); *United States v. Lonetree*, 31 M.J. 849, 876 (N.M.C.M.R.1990)(referring to a "post-trial agreement by which the appellant agreed, *inter alia*, to submit to interrogations and polygraph examinations" in exchange for a reduction in confinement to 25 years); *United States v. Rascoe*, 31 M.J. 544, 560 (N.M.C.M.R.1990)(referring to appellant's offer "to enter into a post-trial agreement as an alternative to confinement"); *United States v. Nutter*, 22 M.J. 727, 728 (A.C.M.R.1986)(noting post-trial agreement to reduce confinement); *United States v. Cooper*, 17 M.J. 1062, 1064 (A.F.C.M.R.1984)(referring to the absence of a post-trial agreement); *United States v. Stamats*, 45 C.M.R. 765, 767–68 & n. 2, 1971 WL 12703 (N.C.M.R.1971)(discussing post-trial agreement to reduce the sentence to 40 years in exchange for truthful testimony in other cases).

In recent years the appellate courts have encouraged litigants to enter into formal, arms-length agreements to resolve issues related to pending courts-martial. As this court observed: "[T]he courts have provided the litigants with much wider latitude to negotiate agreements." *United States v. Davis*, 46 M.J. 551, 552–53 (N.M.Ct.Crim.App.1997)(summarizing other cases). While the appellate courts would not likely bind an appellant to any agreement which was determined to be substantially unfair or which involved governmental overreaching, *see Spriggs v. United States*, 40 M.J. 158, 163 (C.M.A.1994), that is hardly the case here. This post-trial agreement originated with the appellant after full consultation with counsel.[2] Moreover, the appellant expressly stated that he "voluntarily enter[ed] into this agreement." Post Trial Agreement of 28 May 96, ¶ 1. The consideration for his agreement was substantial; by entering into it the appellant avoided having to serve 60 days of adjudged confinement. *Compare id.*, ¶ 2 (limiting confinement to 90 days), *with* Record at 122 (sentence of 150 days' confinement). Had this been the agreement concerning the sentence in the original pretrial agreement, we have no doubt whatsoever that the military judge would have found it to be perfectly acceptable.

In its brief, the Government suggests that we analyze the present issue as a matter in clemency, noting that the convening authority was acting on a request of the appellant. While it is important in our conclusion that this proposal originated with the appellant after consultation with counsel, we believe this agreement transcends a mere clemency request. We note that Article 60(b), UCMJ, 10 U.S.C. § 860(b), and R.C.M. 1107(d), which the Government cites in support of this premise, specifically provide that in exercising clemency the severity of the punishment can only be approved or lessened; it cannot be increased.[3] Although it seemed a less onerous punishment to the appellant at the

---

2. We note that the appellant entered into the agreement "against the advice of my counsel, ... who has strongly counseled me against entering into this post trial agreement." Post Trial Agreement of 28 May 96, ¶ 1.

3. We are aware, of course, that the convening authority did not actually increase the sentence. However, that was certainly the practical effect of his action as permitted under the post-trial agreement as compared to what he would have been required to do under the pretrial agreement.

time he proposed the agreement, an unsuspended bad-conduct discharge is legally and objectively a more severe punishment than 60 days in confinement. We conclude that this issue involves a post-trial agreement: the appellant proposed that both parties be released from the original sentencing provisions in the pretrial agreement and replace those provisions with the alternative provisions. Nonetheless, under the circumstances of this case, we are satisfied that the approved sentence was fundamentally fair and should be affirmed. *See* Art. 66(c), UCMJ, 10 U.S.C. § 866(c).

In this respect we take issue with the appellant's contention that there was no opportunity for "judicial scrutiny" of the agreement's terms and conditions as required by law. While the trial court did not review this post-trial agreement, this court always has the opportunity and obligation to scrutinize post-trial procedures to ensure there is no error which materially prejudices the substantial rights of the appellant. *See United States v. Parker*, 36 M.J. 269, 271 (C.M.A. 1993); *United States v. Craig*, 28 M.J. 321, 322–25 (C.M.A.1989); Arts. 59(a), 66(c), UCMJ, 10 U.S.C. §§ 859(a), 866(c). Taking the appellant's argument to the extreme, the trial judge would be required to conduct a final Article 39(a) session to review all post-trial actions which could conceivably affect the appellant's substantial rights.

■ The Courts of Criminal Appeals have the responsibility to review alleged errors, both during trial and post-trial. *See United States v. Robertson*, 39 M.J. 211, 218 (C.M.A. 1994). This court must assess each allegation of error "on a case-by-case basis." *See United States v. Cobe*, 41 M.J. 654, 655 (N.M.Ct.Crim.App.1994). If the appellant contends that there was a material *sub rosa* agreement, governmental overreaching, or

other infirmity in the post-trial agreement, he should make his case to this court. If appropriate, we would order a *DuBay*[4] hearing to inquire into the matter. However, there are no such allegations in this case and we see no possible benefit to conducting such a hearing.[5] This assignment of error is without merit.

Before moving on, we are concerned with some of the language in the post-trial agreement and the convening authority's action in light of his obligation under it. We note that the appellant's proposal read as follows: "In exchange for the convening authority limiting my confinement to ninety (90) days, I will release the obligation of the convening authority to suspend my Bad Conduct Discharge and understand it may be executed at the convening authority's discretion. The remainder of [the] pretrial agreement will remain in effect." Post Trial Agreement of 28 May 96, ¶ 2. Immediately following this language is a request to defer "any confinement to be suspended pursuant to the terms of this agreement." The agreement also contains provisions as to when the period of such deferment begins to run. *Id.*

■ With respect to the language purporting to authorize the convening authority to execute the bad-conduct discharge, this is of no effect. Notwithstanding that the appellant might have specifically agreed, a convening authority does not have the power or discretion to execute a bad-conduct discharge until appellant review is complete. In this case, the convening authority did not even attempt to do so. Moreover, had he done so, it would have had no effect. Such action would have been a "nullity." *United States v. Caver*, 41 M.J. 556, 565 (N.M.Ct.Crim.App. 1994).

---

4. *United States v. DuBay*, 17 C.M.A. 147, 37 C.M.R. 411, 1967 WL 4276 (1967).

5. In appropriate cases, the Government, appellant, or military judge could request a post-trial Art. 39(a), UCMJ, 10 U.S.C. § 839(a), session to review the terms and conditions of a post-trial agreement or to resolve a factual matter with respect to it. R.C.M. 1102(b)(2). By failing to do so in this case, the appellant arguably forfeited any error stemming from the lack of such a

hearing in this case. *See United States v. Olano*, 507 U.S. 725, 727, 733–34, 113 S.Ct. 1770, 1774, 1777–78, 123 L.Ed.2d 508 (1993). *See also Johnson v. United States*, —— U.S. ——, ——, 117 S.Ct. 1544, 1549–50, 137 L.Ed.2d 718 (1997). In any case, we refuse the invitation to incorporate wholesale the law governing pretrial agreements to control what happens during negotiations between the appellant and the convening authority after trial.

However, we believe remedial action is necessary based on the language concerning the limitation of confinement. Although we believe that the intention of the parties was to suspend confinement in excess of 90 days (probably for a period of 12 months from the date of trial), that is not stated in the agreement. Despite the absence of an express agreement, the convening authority purported to suspend 60 days of confinement in his action. Interpreting the word "limiting" in a manner most favorable to the appellant, *see Giroux*, 37 M.J. at 556, we conclude that it is appropriate to disapprove all confinement in excess of 90 days. We will provide appropriate relief in our decretal paragraph.[6]

### *Ex Post Facto* Punishment

The appellant also contends that the 1996 amendments to Article 57, UCMJ, 10 U.S.C. § 857, and the addition of Article 58b, UCMJ, 10 U.S.C. § 858b (1996), violate the *ex post facto* clause of the Constitution. *See* Pub.L. No. 104–106, §§ 1121, 1122, 110 Stat. 462, 462–63, *as amended by* Pub.L. No. 104–201, § 1068, 110 Stat. 2655 (1996). We agree that the appellant is entitled to administrative review of his claim and, if appropriate, restoration of any property illegally taken from him. *See United States v. Gorski*, 47 M.J. 370, 375 (1997). In our decretal paragraph we will order appropriate administrative review.

### Inappropriately Severe Sentence

In a final assignment of error, the appellant contends that his approved sentence is inappropriately severe when compared to the lesser punishments imposed on two senior noncommissioned officers for similar misconduct. Taking into account the nature of this offender (who had a prior nonjudicial punishment) and these offenses (which included several only the appellant had committed), considering the spectrum of punishments imposed on the various actors involved in these and similar crimes, and recognizing that clemency is not an appropriate role of this court, *United States v. Healy*, 26 M.J. 394, 395–96 (C.M.A.1988), we dis-

agree. We conclude that the approved sentence, as modified below, is not inappropriately severe.

### Conclusion

We affirm the findings of guilty. However, we affirm only so much of the sentence, as approved on review below, as provides for a bad-conduct discharge, confinement for a period of 90 days, forfeiture of $550.00 pay per month for 4 months, and reduction to the lowest enlisted pay grade. Additionally we return the record of trial to the Judge Advocate General of the Navy for appropriate remedial action consistent with our higher Court's decision in *United States v. Gorski*, 47 M.J. 370 (1997).

Chief Judge DOMBROSKI* and Judge SEFTON concur.

---

6. We would remind counsel that precision in drafting legal documents is as necessary in a post-trial agreement as it is in any other part of the trial.

\* Chief Judge DOMBROSKI concurred prior to retirement.